| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, COLORADO<br>Court Address:<br>1777 – 6th Street<br>Boulder, CO  80302 | DATE FILED: August 26, 2021 9:45 PM<br>FILING ID: 8ADBDF3D9873B<br>CASE NUMBER: 2021CV30622 |
| **ERIC TARDIF, Plaintiff**<br><br>v.<br><br>**CHRISTOPHER MARTIN, Defendant** | **Court Use Only** |
| Attorney for Plaintiff:<br>Teresa Locke, #26148<br>The Locke Law Firm, PC<br>1624 Market Street, Suite 202<br>Denver, CO  80202<br>Phone:  303-668-7284   Email:  teresa@lockelawyers.com | Case Number:<br><br>Div.:        Ctrm.: |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT,<br>COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT<br>AND JURY DEMAND** | |

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

    ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

    ☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

    By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

    **Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

**Date:** August 26, 2021                              /s/ Teresa Locke
                                                       **Signature of Party or Attorney for Party**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, COLORADO<br>Court Address:<br>1777 – 6th Street<br>Boulder, CO  80302 | DATE FILED: August 26, 2021 9:45 PM<br>FILING ID: 8ADBDF3D9873B<br>CASE NUMBER: 2021CV30622 |
| **ERIC TARDIF, Plaintiff**<br><br>v.<br><br>**CHRISTOPHER MARTIN, Defendant** | **Court Use Only** |
| Attorney for Plaintiff:<br>Teresa Locke, #26148<br>The Locke Law Firm, PC<br>1624 Market Street, Suite 202<br>Denver, CO  80202<br>Phone:  303-668-7284     Email:  teresa@lockelawyers.com | Case Number:<br><br>Div.:          Ctrm.: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT: Christopher Martin**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: August 26, 2021                              /s/ Teresa Locke
                                                                Signature of Plaintiff's Attorney

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:**  A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal.  The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

JDF 600   R10-13    DISTRICT COURT CIVIL SUMMONS

**EXHIBIT A**

| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, COLORADO<br>Court Address:<br>1777 – 6th Street<br>Boulder, CO 80302 | DATE FILED: August 26, 2021 9:45 PM<br>FILING ID: 8ADBDF3D9873B<br>CASE NUMBER: 2021CV30622 |
| **ERIC TARDIF, Plaintiff**<br><br>v.<br><br>**CHRISTOPHER MARTIN, Defendant** | **Court Use Only** |
| Attorney for Plaintiff:<br>Teresa Locke, #26148<br>The Locke Law Firm, PC<br>1624 Market Street, Suite 202<br>Denver, CO 80202<br>Phone: 303-668-7284   Email: teresa@lockelawyers.com | Case Number:<br><br>Div.:      Ctrm.: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Eric Tardif, by and through his attorney, Teresa Locke of The Locke Law Firm, PC, state and allege as follows for their Complaint against Defendant Christopher Martin:

## I.  PARTIES

1. Plaintiff Eric Tardif is an individual residing in Boulder County, Colorado.

2. Defendant Christopher Martin is an individual residing at 5495 Parkford Circle, Granite Bay, California.

## II.  JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to C.R.S. § 13-1-124 because the parties transacted business within the state of Colorado.

4. Venue is proper in the Boulder County District Court pursuant to Colo. R. Civ. P. 98(c).

## III.  FACTS

5. Mr. Tardif is married to Alyshia Vaughn.

1                                    **EXHIBIT A**

6. Ms. Vaughn is the ex-wife of Mr. Martin.

7. Mr. Martin and Ms. Vaughn were divorced in October 2017 through the Superior Court of California, County of Placer.

8. Ms. Vaughn and Mr. Martin share three children. Per their Judgment of Dissolution, Ms. Vaughn and Mr. Martin exercise a 50/50 parenting plan presently with two weeks on/two weeks off schedule.

9. In December 2020, Mr. Tardif, Ms. Vaughn and Mr. Martin began discussing, negotiating, and crafting an agreement for both families to relocate with the children from Granite Bay, California to Boulder, Colorado. By both parents (Ms. Vaughn and Mr. Martin) relocating to Boulder, they could continue their 50/50 parenting time arrangement, which at that time was one week on/one week off.

10. The thrust of the agreement between the parties was that Mr. Tardif would purchase a home in Boulder for Mr. Martin use as his principal residence in order to facilitate his move to Boulder. Mr. Martin's Boulder home would be co-owned by Mr. Tardif and Mr. Martin. Mr. Martin indicated that he could not afford to relocate to Boulder without financial assistance from Mr. Tardif, and Mr. Tardif contractually agreed to provide Mr. Martin with the financial assistance in the form of favorable financing terms and co-ownership.

11. The process of relocating was a long, well contemplated process, with Mr. Martin making multiple trips to Boulder, Colorado to search for homes and neighborhoods that would suit his needs. There was also significant time spent negotiating and structuring the ownership/partnership between the parties to facilitate the goals of shared ownership structure, allocation of gains according to investment, and means of handling a buy-out at a later date. Most of these communications and agreement were conducted in writing, via email between the

parties, or with Colorado counsel.

12. On April 27, 2021, Mr. Martin sent an email to Mr. Tardif and Ms. Vaughn specifying the terms of the agreement. Mr. Tardif and Ms. Vaughn responded to the April 27 email with an affirmative agreement to the terms set forth by Mr. Martin in his email.

13. Based on terms agreed to by the parties and evidenced in Mr. Martin's term sheet, Mr. Tardif purchased the $2.325 million home located at 733 – 13th Street that Mr. Martin had selected for his residence. The terms ultimately agreed to by all parties, including Mr. Martin, was that Mr. Tardif would put forth the initial funds for the purchase and would carry a note for Mr. Martin on $900,000 at 1% for a term of nine years.

14. Mr. Martin was intricately involved in the purchase process, including but not limited to being personally present for the inspection of the home prior to close.

15. Immediately following the purchase of the 13th Street property, Mr. Martin was given possession and control over the home. He spent time making repairs and upgrades to the home beginning shortly after the purchase. He also moved certain belongings into the home, initiated utility services in his name, and transported a car from California to Boulder for his use there.

16. In addition to the purchase of the 13th Street property, the parties negotiated additional financial payments to be advanced from Mr. Tardif to Mr. Martin to assist Mr. Martin with his relocation Boulder. Specifically, Mr. Tardif agreed to pay certain costs in the amount of $65,000 associated with Mr. Martin's relocation as well as to provide up to $75,000 to Mr. Martin for renovations he wished to make on the 13th Street property and to defer his obligation to make mortgage payments on the home for one year. The parties agreed that the $75,000 renovation funds would be capitalized in the home purchase.

**EXHIBIT A**

17.     In reliance on the parties' agreement, Mr. Tardif made the following payments to Mr. Martin:  $10,000 on December 21, 2020; $5,000 on December 28, 2020;  $15,000 on May 24, 2021; and  $10,000 in May 24, 2021.

18.     In reliance on the parties' agreement, Mr. Martin accepted the payments outlined in Paragraph 17 and began renovations on the 13th Street home shortly after the purchase utilizing such funds.

19.     In reliance upon the April 27, 2021 agreement, Mr. Martin's representations, Mr. Martin's acceptance of the $40,000 in cash advanced by Mr. Tardif, and Mr. Martin's involvement and agreement to the purchase of the 13th Street home, Mr. Tardif and Ms. Vaughn sold their home in Granite Bay, California.  In addition, though Mr. Tardif and Ms. Vaughn owned properties in Boulder prior to the agreement with Mr. Martin (in anticipation of eventually retiring in Boulder together), following the agreement among the parties, Mr. Tardif and Ms. Vaughn purchased a home at 943 Spruce Street in Boulder in order to be closer to Mr. Martin's home for the convenience of the children and to have more space to accommodate living in Boulder full time.

20.     In May 2021, Mr. Martin and Ms. Vaughn enrolled their three children in schools in the Boulder Valley School District and disenrolled them from their current Granite Bay schools.  Mr. Martin fully participated in this process, providing input on school selection and providing documents to Ms. Vaughn to facilitate school enrollment.

21.     During May and June 2021, Mr. Tardif continued to work with Mr. Martin on the "fine details" of the home purchase agreement.  Mr. Tardif hired an attorney in Boulder, Colorado to draft the contract terms based upon Mr. Martin's April 27, 2021 emailed terms.  Mr. Tardif's attorney alerted them to the need to change the structure of the mortgage for nine years

and 1% interest, rather than the ten years and 0.75% interest rate in the April 27 term sheet, to avoid IRS code violations.

22. On June 17, 2021, Mr. Tardif sent Mr. Martin a modified term sheet that clarified how the terms needed to be changed to comply with IRS code sections and that proposed a modified ownership structure. Mr. Tardif provided the term sheet for consideration and comparison only and never rejected Mr. Martin's proposal of April 27, 2021 – indeed, the April 27, 2021 term sheet had already been accepted by the parties. The June 17, 2021 term sheet demonstrated the relative equivalency of the two structures and was to serve as a discussion document.

23. On June 17, 2021, Mr. Martin indicated to Mr. Tardif and Ms. Vaughn that he would not agree to the comparative structure. Mr. Tardif then communicated to his Colorado attorney, Margot Edwards, his belief that the shared ownership structure agreed on April 27 was the only structure acceptable to Mr. Martin. Mr. Tardif instructed Ms. Edwards to meet with Mr. Martin and to conclude the transaction based on the April 27 structure. At no time on June 17, 2021, did Mr. Martin indicate any belief that the June 17 comparative term sheet was a repudiation of the agreement, and in fact, he agreed to discuss the potential merits of both structures with Ms. Edwards.

24. On June 18, 2021, Mr. Martin visited the home of Mr. Tardif and Ms. Vaughn in California. Mr. Martin apologized for certain outbursts, which took place telephonically with Ms. Vaughn, and attributed these outbursts to his anxiety. Mr. Tardif and Ms. Vaughn accepted the apology and requested that the parties move forward with the agreement based on the April 27 structure and that Mr. Martin meet with Ms. Edwards during Mr. Martin's upcoming trip to Boulder to complete the transaction.

25. On June 18, 2021, Mr. Tardif's Colorado attorney spoke with Mr. Martin by phone for approximately 45 minutes to discuss the specific details related to the planned joint venture with Mr. Tardif and Ms. Vaughn. Mr. Martin wanted to ensure that Mr. Tardif's June 17 term sheet was not a repudiation of Mr. Martin's April 27 term sheet. Mr. Tardif's counsel reassured Mr. Martin that the June 17 proposal was *not* a repudiation of the April 27 term sheet – it simply contained other options that could be discussed but that were not deal breakers.

26. Following the June 18 phone call, Mr. Martin agreed to travel to Colorado to meet in person with Margot Edwards during his upcoming trip to Boulder for a working session to finalize the minor details related to the purchase agreement and other transaction documents.

27. Mr. Martin met with Mr. Tardif's attorney in Boulder on June 23, 2021. By the end of the meeting, the parties had reached an agreement on the remaining financial terms of the transaction (including a resolution to the length of the note and the acceptable IRS interest rate, which the parties were able to balance out through Mr. Tardif's assumption of the property insurance for the home), and nothing remained unresolved on the April 27 term sheet. Mr. Martin and Mr. Tardif's attorney agreed that the attorney would talk with Mr. Tardif the following day to finalize the drafts of the purchase agreement, the note and the deed of trust, and then she would send the documents to Mr. Martin the following week.

28. On June 24, 2021, Mr. Martin left Mr. Tardif a voicemail confirming that the meeting with Ms. Edwards was a success, saying that everything looked good and there were just a few last things to button up.

29. On June 26, 2021, Mr. Martin sent an email stating that he was no longer moving to Boulder, Colorado and no longer consented to the children attending school in Boulder.

30. Also on or about June 26, 2021, Mr. Martin unilaterally told the children and

other family members that they were no longer moving to Boulder, Colorado, causing total chaos and distress for the children.

31. On June 28, 2021, Mr. Martin re-enrolled the children in their Placer County Schools despite them being enrolled with both parties' consent in Colorado.

32. On July 2, 2021, Mr. Martin informed Ms. Vaughn that he would not "agree" for the children to travel with her outside of California.

33. On July 9, 2021, Mr. Martin filed papers in the California custody matter seeking to prevent the children from moving to Colorado.

34. On July 13, 2021, the California judge ruled that the children must stay in California pending further court proceedings in the custody matter.  As a result, Mr. Tardif and Ms. Vaughn have not been able to fully and permanently relocate to Colorado.  Because they already sold their Granite Bay home, Mr. Tardif has been (and will continue to be) required to arrange and pay for temporary housing and transportation in California as well as additional travel costs between California and Colorado so that Ms. Vaughn may exercise her parenting time with the children.

35. Mr. Martin's repudiation of the parties' agreement to relocate to Colorado has caused Mr. Tardif significant damage.

### IV.     FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT

36. Mr. Tardif realleges the facts contained in Paragraphs 1-35 above as though fully set forth herein.

37. For Mr. Tardif to recover for breach of contract, he must show that a contract existed, that he performed his duties, that Mr. Martin failed to perform his contractual duties and his failure resulted in damages.

38. The April 27, 2021 term sheet represents a meeting of the minds and the formation of a contract. Although not signed by Mr. Tardif, Mr. Martin has acknowledged, under oath, in an affidavit filed with the California court in the custody case that Mr. Tardif agreed to the April 27 terms.

39. Mr. Tardif evidenced his agreement to the contract by selling his and Ms. Vaughn's house in Granite Bay, California; purchasing the Spruce Street home in Boulder; advancing Mr. Martin $40,000 between December 2020 and May 2021 to assist with his travel, moving expenses and renovation expenses related to the 13th Street home; and unenrolling the children from their California schools and enrolling them in Boulder Valley School District schools.

40. Mr. Martin evidenced his agreement to the contract by accepting the $40,000 advancement; participating in the selection and purchase of the 13th Street home; beginning renovations to the 13th Street home; moving certain of his personal property into the 13th Street home; initiating utility services in his name at the home; participating in the enrollment of the children in Boulder Valley District schools; informing certain of the children's teachers in Granite Bay, along with other friends, family and acquaintances, that the family was moving; and traveling to Colorado to meet with Ms. Edwards to finalize the contractual documents.

41. Mr. Tardif fully performed his duties under the contract.

42. Mr. Martin repudiated and breached the agreement by refusing to relocate to Colorado, by refusing to allow the children to relocate to Colorado, and by filing his July 9, 2021 pleadings in the California case to seek greater custody of the children based on Ms. Vaughn's move to Colorado.

43. Mr. Tardif suffered damages in an amount to be proven at trial as a direct and

proximate result of Mr. Martin's breach of contract.

## V.     SECOND CAUSE OF ACTION – CONVERSION

44. Mr. Tardif realleges the facts contained in Paragraphs 1-43 above as set forth herein.

45. Mr. Martin took possession of $40,000 belonging to Mr. Tardif.

46. When Mr. Martin repudiated the parties' contract, his exercise of control over the $40,000 became unauthorized.

47. Mr. Tardif demanded the return of their $40,000 on July 14, 2021.

48. Mr. Martin has refused to return the entire $40,000.

49. Mr. Tardif has suffered damages in an amount to be proven at trial as a result of Mr. Martin's refusal to return the entire $40,000 belonging to Mr. Tardif.

## VI.     THIRD CAUSE OF ACTION – CIVIL THEFT

50. Mr. Tardif realleges the facts contained in Paragraphs 1-49 above as set forth here

51. Pursuant to C.R.S. § 18-4-401, a person commits theft when they knowingly obtain, retain, or exercise control over anything of value of another without authorization and intend to deprive the other person permanently of the use or benefit of the thing of value.

52. Mr. Martin knowingly retained and exercised control over Mr. Tardif's $40,000 without authorization.

53. Mr. Martin intended to permanently deprive Mr. Tardif of the use or benefit of his $40,000.

54. Mr. Martin acted with knowledge for his own benefit thus perpetrated a civil theft.

55. Mr. Tardif suffered damages in an amount to be proven at trial as a direct and

proximate of Mr. Martin's theft.

## VII.  FOURTH CAUSE OF ACTION – FRAUD

56. Mr. Tardif realleges the facts contained in Paragraphs 1-55 above as set forth herein.

57. Mr. Martin made a false representation to Mr. Tardif when he stated that he agreed to relocate to Boulder, Colorado so that he and Ms. Vaughn could continue to share 50/50 parenting time with their children.

58. Mr. Martin's false representation was material.

59. Mr. Martin made the representation knowing it to be false.

60. Mr. Martin made the representation with the intent that Mr. Tardif rely on it.

61. Mr. Tardif, in fact, did rely on Mr. Martin's representation by, among other things, purchasing both the Spruce Street home and the 13th Street home in Boulder; selling his and Ms. Vaughn's house in Granite Bay, California; advancing Mr. Martin $40,000 between December 2020 and May 2021 to assist with his travel, moving expenses and renovation expenses related to the 13th Street home; and unenrolling the children from their California schools and enrolling them in Boulder Valley School District schools.

62. Mr. Tardif's reliance on Mr. Martin's representations was justified.

63. Mr. Tardif's reliance on Mr. Martin's representations caused Mr. Tardif significant damages in an amount to be proven at trial.

## VIII.  FIFTH CAUSE OF ACTION - PROMISSORY ESTOPPEL

64. Mr. Tardif realleges the facts contained in Paragraphs 1-63 above as set forth herein.

65. Mr. Martin made a promise to relocate to Boulder, Colorado and to co-own a home in Boulder, Colorado with Mr. Tardif.

66. Mr. Martin should reasonably have expected that his promise would induce action by Mr. Tardif.

67. Mr. Tardif, in fact, did reasonably rely on Mr. Martin's promise to his detriment and the detriment of Ms. Vaughn by, among other things, purchasing the Spruce Street home and the 13th Street homes in Boulder, Colorado; selling his and Ms. Vaughn's house in Granite Bay, California; advancing Mr. Martin $40,000 between December 2020 and May 2021 to assist with his travel, moving expenses and renovation expenses related to the 13th Street home; and unenrolling the children from their California schools and enrolling them in Boulder Valley School District schools.

68. Mr. Tardif has suffered damages in an amount to be proven at trial as a result of Mr. Martin's failed promises.

69. Mr. Martin's promise to relocate and co-own the Boulder, Colorado home must be enforced to prevent injustice.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, having set forth the allegations, claims, and causes of action, Plaintiff demands judgment against Defendant for damages as are proved at trial, enforcement of promises, costs to the fullest extent allowable, prejudgment interest from the date of injury to the date of judgment, post-judgment interest to the date of satisfaction of the judgment and such other and further relief as the Court may deem just and proper.

A JURY TRIAL IS DEMANDED.

DATED this 26th day of August, 2021.

                                        Respectfully submitted,

                                        /s/ Teresa D. Locke
                                        *Original Signature on File*
                                        Teresa D. Locke, #26148

                                        **ATTORNEYS FOR PLAINTIFF**

Plaintiff's address:

943 Spruce Street
Boulder, CO  80302