UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02439-NRN

ERIC TARDIF, an individual,

      Plaintiff,

v.

CHRISTOPHER MARTIN, an individual,

      Defendant.

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Eric Tardif ("Plaintiff" or "Mr. Tardif") files his Amended Complaint and Jury Demand and states and alleges as follows:

### INTRODUCTION

1. On April 27, 2021, Mr. Tardif and Defendant Christopher Martin ("Defendant" or "Mr. Martin") entered into a contract ("Agreement") in which Mr. Martin agreed to purchase a 50% ownership interest in real estate located at 733 13th Street, Boulder, Colorado 80302 ("13th Street property") from Mr. Tardif.

2. Mr. Tardif had recently purchased the 13th Street property for $2.325 million.

3. Mr. Tardif purchased the 13th Street property for use as Mr. Martin's residence, and in reliance on promises made by Mr. Martin, and Mr. Martin's assurances that he would enter into an agreement regarding the use and ownership of the property.

4. The Agreement required, among other terms, that Mr. Tardif would put forth the initial funds for the purchase, that Mr. Tardif would provide Mr. Martin funds for renovations of

the property and expenses associated with moving from California to Colorado, that Mr. Martin would provide Mr. Tardif a $300,000 down payment, and that Mr. Tardif would carry a note for Mr. Martin on $900,000 at 1% for a term of ten years.

5.     Both parties then took substantial steps toward completing and complying with the terms of the Agreement, including by making payments contemplated in the Agreement, by making renovations to the residence as set forth in the Agreement, by enrolling Mr. Martin's children in school in Boulder, by moving Mr. Martin's belongings into the home, and by placing utility services in Mr. Martin's name.

6.     Then, on June 26, 2021, Mr. Martin breached the Agreement by suddenly and unexpectedly refusing to proceed with purchasing a 50% ownership interest in the 13th Street property and informing Mr. Tardif that he was no longer moving to Boulder.

7.     Despite Mr. Tardif's requests that Mr. Martin comply with the terms of the Agreement, Mr. Martin has continuously refused, causing Mr. Tardif to bring this action to compel Mr. Martin to specifically perform his obligations. If specific performance becomes unavailable for any reason, or to the extent damages may be awarded in addition to specific performance, Mr. Tardif seeks to recover all compensatory, direct, indirect, consequential, incidental, and other forms of damages resulting from Mr. Martin's breach of the Agreement.

**PARTIES**

8.     Mr. Tardif is an individual residing in Boulder County, Colorado.

9.     Mr. Martin is an individual residing at 5495 Parkford Circle, Granite Bay, California.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction of this case under 28 U.S.C. § 1332(a) because there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. The Court has specific personal jurisdiction over Mr. Martin. Mr. Martin has numerous related contacts with Colorado. Mr. Martin agreed to move to Boulder and purchase an interest in real property there. Mr. Martin also traveled to Boulder to visit the property, make renovations to the property, and move his belongings into the residence.

12. Venue is proper within this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this lawsuit occurred in the District of Colorado. Mr. Martin made the underlying promises to Mr. Tardif in Colorado, and the case involves an Agreement to be performed in Colorado. In addition, venue is proper within this district because the real property which is the subject of this action is situated within the District of Colorado.

## FACTS

### A. Background on the Parties

13. Mr. Tardif is married to Alyshia Vaughn.

14. Ms. Vaughn is the ex-wife of Mr. Martin.

15. Mr. Martin and Ms. Vaughn were divorced in October 2017 through the Superior Court of California, County of Placer.

16. Ms. Vaughn and Mr. Martin share three children. Per their Judgment of Dissolution, Ms. Vaughn and Mr. Martin exercise a 50/50 parenting plan presently with two weeks on/two weeks off schedule.

### B. Mr. Martin Promises to Move to Boulder, Colorado from Granite Bay, California

17. In December 2020, Mr. Tardif, Ms. Vaughn and Mr. Martin began discussing, negotiating, and crafting an agreement for both families to relocate with the children from Granite Bay, California to Boulder, Colorado. By both parents (Ms. Vaughn and Mr. Martin) relocating to Boulder, they could continue their 50/50 parenting time arrangement, which at that time was one week on/one week off.

18. Mr. Martin indicated that he could not afford to relocate to Boulder without financial assistance from Mr. Tardif. Therefore, Mr. Tardif agreed to purchase a home in Boulder for Mr. Martin to use as his principal residence in return for Mr. Martin's promise to relocate to Boulder and purchase a 50% ownership interest in the property, among other terms.

19. The parties reached this agreement through a long, well contemplated process that involved Mr. Martin making multiple trips to Boulder to search for homes and neighborhoods that would suit his needs. The parties also spent a significant amount of time negotiating and structuring the ownership/partnership between the parties to facilitate the goals of shared ownership structure, allocation of gains according to investment, and means of handling a buy-out at a later date. Most of these communications were conducted in writing, via email between the parties, or with Colorado counsel.

20. Mr. Martin represented to Mr. Tardif that his current job would not allow him to work remotely, so he initially planned to take the Colorado Bar exam and obtain alternative employment in Colorado. Mr. Martin later represented to Ms. Vaughn that he believed reciprocity exists between California and Colorado so he would not have to take the Colorado Bar exam.

21. In March 2021, Ms. Vaughn and Mr. Martin jointly informed their children that their family would be moving to Boulder.

### C. Mr. Martin and Mr. Tardif Enter Into a Contract for Mr. Martin to Purchase a Joint Ownership Interest in the 13th Street Property

22. After Mr. Martin promised to relocate to Boulder, and in reliance on Mr. Martin's promises, Mr. Tardif purchased the 13th Street property for $2.325 million on April 23, 2021.

23. Mr. Martin was intimately involved in the purchase process, including but not limited to, personally selecting the home as his residence and being personally present for the inspection of the home prior to close.

24. On April 27, 2021, Mr. Martin sent an email to Mr. Tardif and Ms. Vaughn specifying the terms for his agreement to purchase a 50% ownership interest in the 13th Street property.

25. Mr. Martin's April 27 email stated, among other terms, that (i) Mr. Tardif would put forth the initial funds for the purchase and would carry a note for Mr. Martin on $900,000 at .75% for a term of ten years; (ii) Mr. Martin would provide a down payment of $300,000 to Mr. Tardif within 12 months; (iii) Mr. Tardif would defer Mr. Martin's obligation to make mortgage payments for 12 months; (iv) Mr. Tardif and Mr. Martin would share "50/50" ownership; (v) Mr. Tardif would provide Mr. Martin $65,000 to assist with relocation costs; and (vi) Mr. Tardif would provide Mr. Martin $75,000 for improvements to the property, which would be capitalized into the initial value of the residence.

26. Mr. Tardif agreed to the terms Mr. Martin set forth in his April 27, 2021 email.

5

### D.  Mr. Tardif and Mr. Martin Begin Complying with the Terms of the Agreement

27. Immediately following the purchase of the 13th Street property and the April 27, 2021 email, the parties began to perform the terms of the contract.

28. Mr. Martin was given possession and control over the home. He spent time making repairs and upgrades to the home, he moved certain belongings into the home, he initiated utility services in his name, and he transported a car from California to Boulder for his use there.

29. In reliance on Mr. Martin's promise to move to Boulder and the Agreement, Mr. Tardif made the following payments to Mr. Martin, either directly or indirectly through his wife: $10,000 on December 21, 2020; $5,000 on December 28, 2020; $15,000 on May 24, 2021; and $10,000 in May 24, 2021, for a total of $40,000.

30. Mr. Tardif made these payments in partial performance of the Agreement, and for the specific purpose of allowing Mr. Martin to move to Colorado.

31. In accordance with the Agreement, Mr. Martin accepted the $40,000 in payments and began renovations on the 13th Street property.

32. In reliance on the Agreement, Mr. Martin's representations, Mr. Martin's acceptance of the $40,000 in cash advanced by Mr. Tardif, and Mr. Martin's involvement and agreement to the purchase of the 13th Street property, Mr. Tardif and Ms. Vaughn sold their home in Granite Bay, California.

33. The sale on Mr. Tardif's and Ms. Vaughn's home in Granite Bay, California closed on June 4, 2021.

34. In addition, though Mr. Tardif and Ms. Vaughn owned properties in Boulder prior to the agreement with Mr. Martin (in anticipation of eventually retiring in Boulder together), following the agreement among the parties, Mr. Tardif and Ms. Vaughn purchased a home at 943 Spruce Street in Boulder in order to be closer to Mr. Martin's home for the convenience of the children and to have more space to accommodate living in Boulder full time.

35. In May 2021, Mr. Martin and Ms. Vaughn enrolled their three children in schools in the Boulder Valley School District and disenrolled them from their Granite Bay schools.

36. Mr. Martin fully participated in the school enrollment and disenrollment process, providing input on school selection and providing documents to Ms. Vaughn to facilitate school enrollment. Mr. Martin also returned to the Granite Bay schools the children's Chromebooks, provided by the schools in Granite Bay for the children's use while enrolled there.

### E.  Mr. Tardif Proposes a Contract Modification, which Mr. Martin Ultimately Rejects

37. During May and June 2021, Mr. Tardif hired an attorney in Boulder to draft a formal written contract based upon Mr. Martin's April 27, 2021 emailed terms.

38. During that process, Mr. Tardif's attorney alerted him to the need to change the structure of the mortgage to avoid violations of the IRS code, which required a 1% minimum interest rate, rather than the 0.75% interest rate to which the parties had previously agreed.

39. On June 17, 2021, Mr. Tardif sent Mr. Martin a proposed contract modification that included a modified ownership structure resolving the interest rate issue without changing the net financial effect of the transaction. Mr. Tardif provided the proposed modification for consideration and comparison only and never repudiated the Agreement, which had already been

7

accepted by the parties. The June 17, 2021 proposed modification demonstrated the relative equivalency of the two structures and was to serve as a discussion document.

40. On June 17, 2021, Mr. Martin indicated to Mr. Tardif and Ms. Vaughn that he would not agree to the comparative structure.

41. Mr. Tardif then communicated to his Colorado attorney, Margot Edwards, his belief that the shared ownership structure previously agreed to was the only structure acceptable to Mr. Martin. Mr. Tardif instructed Ms. Edwards to meet with Mr. Martin and to conclude the transaction based on the terms to which the parties had previously agreed.

42. At no time on June 17, 2021, did Mr. Martin indicate any belief that the June 17 comparative term sheet was a repudiation of the Agreement, and in fact, he agreed to discuss the potential merits of both structures with Ms. Edwards.

43. On June 18, 2021, Mr. Martin visited the home of Mr. Tardif and Ms. Vaughn in California. Mr. Martin apologized for certain outbursts, which took place telephonically with Ms. Vaughn, and attributed these outbursts to his anxiety. Mr. Tardif and Ms. Vaughn accepted the apology and requested that the parties move forward with the terms of the Agreement and that Mr. Martin meet with Ms. Edwards during Mr. Martin's upcoming trip to Boulder to complete the transaction.

44. On June 18, 2021, Mr. Tardif's Colorado attorney spoke with Mr. Martin by phone for approximately 45 minutes to discuss the specific details related to the planned joint venture with Mr. Tardif. Mr. Martin wanted to ensure that Mr. Tardif's June 17 proposed modification was not a repudiation of the parties' prior Agreement.

45. Mr. Tardif's counsel reassured Mr. Martin that the June 17 proposal was *not* a repudiation of the Agreement—it simply contained other options that could be discussed but that were not deal breakers.

### F. Mr. Martin Meets with Mr. Tardif's Attorney, and the Parties Finalize all Contract Details

46. Following the June 18 phone call, Mr. Martin agreed to travel to Colorado to meet in person with Margot Edwards during his upcoming trip to Boulder for a working session to finalize the minor details related to the purchase agreement and other transaction documents.

47. Mr. Martin met with Mr. Tardif's attorney in Boulder on June 23, 2021.

48. By the end of the meeting, the parties had reached an agreement on a modification of the financial terms of the transaction, including a resolution to the length of the note and the acceptable IRS interest rate, which the parties were able to balance out through Mr. Tardif's assumption of the property insurance for the home.

49. None of the terms remained unresolved in Mr. Martin's April 27, 2021 email. Mr. Martin and Mr. Tardif's attorney agreed that the attorney would talk with Mr. Tardif the following day to finalize the drafts of the purchase agreement, the note and the deed of trust, and then she would send the documents to Mr. Martin the following week.

50. On June 24, 2021, Mr. Martin left Mr. Tardif a voicemail confirming that the meeting with Ms. Edwards was a success and saying that everything looked good.

51. Thus, the parties agreed on June 23, 2021 to modify the terms of the Agreement to include an interest rate of 1%, rather than the previously agreed on 0.75% interest rate, and for Mr. Tardif to pay the property insurance for the home.

9

### G. Mr. Martin Breaches the Parties' Contract

52. On June 26, 2021, Mr. Martin unexpectedly sent an email stating that he was no longer moving to Boulder and no longer consented to the children attending school in Boulder.

53. The only reason Mr. Martin provided for his breach of the Agreement in his June 26 email was that Mr. Tardif recently decided "to set aside [the parties'] agreement from April."

54. Mr. Tardif had not decided to set aside the parties' prior Agreement. To the contrary, Mr. Martin and Mr. Tardif's attorney had agreed just two days prior to proceed on the terms the parties had previously agreed to, with only minor changes to comply with IRS regulations.

55. Also on or about June 26, 2021, Mr. Martin unilaterally told the children and other family members that he was no longer moving to Boulder.

56. Mr. Martin's statements to the children confused the children and caused chaos and distress for them.

57. On June 27, 2021, Mr. Martin sent a text message to Mr. Tardif that stated, "There are a few moving parts that you may not be fully aware of that make this more complicated. This isn't the time for me to move but I'd like you to understand."

58. When Mr. Martin spoke to Mr. Tardif, Mr. Martin admitted that the June 17 proposed modification was not the reason for Mr. Martin's breach of the Agreement. Mr. Martin vaguely stated that this was not the "right time" for him to move, that his job would not permit him to work remotely in Boulder and that he had a girlfriend in Arizona.

59. However, Mr. Martin knew before entering into the Agreement that he would be unable to work remotely at his current job and that moving to Boulder would require him to

obtain a different job, and Mr. Martin's girlfriend lived away from Colorado throughout the negotiations and her location of residence was not a factor in the discussions.

60. On June 28, 2021, Mr. Martin re-enrolled the children in Placer CountySchools in California, without Ms. Vaughn's consent, and despite them being enrolled with both parents' consent in Colorado.

61. On July 2, 2021, Mr. Martin informed Ms. Vaughn that he would not "agree" for the children to travel with her outside of California.

62. On July 9, 2021, Mr. Martin filed papers in the California custody matter seeking to prevent the children from moving to Colorado.

63. On July 13, 2021, the California judge ruled that the children must stay in California pending further court proceedings in the custody matter. As a result, Mr. Tardif and Ms. Vaughn have not been able to fully and permanently relocate to Colorado. Because they already sold their Granite Bay home, Mr. Tardif has been (and will continue to be) required to arrange and pay for temporary housing and transportation in California as well as additional travel costs between California and Colorado so that Ms. Vaughn may exercise her parenting time with the children.

64. Upon information and belief, when Mr. Martin entered into the Agreement and promised to move to Colorado, his true intent was not to move to Colorado as promised, but to continue to reside in California with custody over his and Ms. Vaughn's children. During his June 23 meeting with Mr. Tardif's counsel, Mr. Martin indicated that he did not truly want to move to Boulder, Colorado.

65. Upon information and belief, Mr. Martin did not intend to honor the Agreement when he entered into it, but instead intended to have Mr. Tardif rely on the Agreement by moving himself and his wife to Colorado, so that Mr. Martin could use their relocation to Colorado as leverage in the California proceedings. Requiring the children to stay in California while Ms. Vaughn moved out of state would provide him greater control over his and Ms. Vaughn's children with less day-to-day involvement from Ms. Vaughn and Mr. Tardif.

66. Mr. Martin knew that the California custody court would be unlikely to allow the children to move without his consent. Mr. Martin also knew that Ms. Vaughn was unlikely to move to Boulder unless he agreed to move. Thus, Mr. Martin misled Mr. Tardif and Ms. Vaughn for months regarding his intention to move to Colorado. After Mr. Tardif and Ms. Vaughn completed their move to Colorado, Mr. Martin breached the Agreement and refused to move to Colorado without any valid explanation.

67. Mr. Martin initially indicated that he was breaching the Agreement because Mr. Tardif had proposed a modified structure. This was false. The parties had agreed to proceed under substantially identical terms to those in Mr. Martin's April 27 email *after* Mr. Tardif proposed a modified structure. Mr. Martin then represented to Mr. Tardif that he breached the Agreement because his job would not allow him to work remotely in Colorado and because his girlfriend lived in Arizona. But Mr. Martin had known these facts before he entered into the Agreement. Mr. Tardif's failure to provide any rational basis for his repudiation of the Agreement indicates that he never intended to fully comply with the terms of the Agreement, and instead always intended to remain in California with his children.

68. Upon information and belief, Mr. Martin made these misrepresentations to Mr. Tardif due to his disdain for Mr. Tardif and Ms. Vaughn. During his June 23 meeting with Mr. Tardif's counsel, Mr. Martin made derogatory remarks regarding Mr. Tardif and Ms. Vaughn. For instance, Mr. Martin revealed his belief that Mr. Tardif broke up his marriage with Ms. Vaughn and that Ms. Vaughn did not care if her children were close to her.

69. Mr. Martin's breach of the parties' Agreement has caused Mr. Tardif significant damage.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

70. Mr. Tardif realleges the facts contained in Paragraphs 1-69 above as though fully set forth herein.

71. For Mr. Tardif to recover for breach of contract, he must show that a contract existed, that he performed his duties, that Mr. Martin failed to perform his contractual duties and his failure resulted in damages.

72. The April 27, 2021 Agreement represents a meeting of the minds and the formation of a contract. Although not signed by Mr. Tardif, Mr. Martin has acknowledged, under oath, in an affidavit filed with the California court in the custody case that Mr. Tardif agreed to the April 27 terms.

73. Mr. Tardif evidenced his agreement to the contract by selling his and Ms. Vaughn's house in Granite Bay, California; purchasing the Spruce Street home in Boulder; advancing Mr. Martin $40,000 between December 2020 and May 2021 to assist with his relocation and renovation expenses related to the 13th Street property; and disenrolling the

13

children from their California schools and enrolling them in Boulder Valley School District schools.

74. Mr. Martin evidenced his agreement to the contract by accepting the $40,000 advancement; participating in the selection and purchase of the 13th Street property; beginning renovations to the 13th Street property; moving certain of his personal property into the 13th Street property; initiating utility services in his name at the home; participating in the enrollment of the children in Boulder Valley District schools; informing certain of the children's teachers in Granite Bay, along with other friends, family and acquaintances, that the family was moving; and traveling to Colorado to meet with Ms. Edwards to finalize the contractual documents.

75. The parties subsequently agreed to modify the terms of the Agreement to include a 1% interest rate pursuant to IRS requirements, and to require Mr. Tardif to assume all property insurance expenses.

76. Mr. Tardif fully performed his duties under the contract.

77. Mr. Martin repudiated and breached the agreement by, among other actions, refusing to purchase a 50% ownership interest in the 13th Street property, refusing to relocate to Colorado, refusing to allow the children to relocate to Colorado, and by filing his July 9, 2021 pleadings in the California case to seek greater custody of the children based on Ms. Vaughn's move to Colorado.

78. As a direct and proximate result of Mr. Martin's breach of the Agreement, Mr. Tardif has suffered damages and losses.

79. Mr. Tardif seeks to compel Mr. Martin to specifically perform the terms of the parties' Agreement. To the extent permitted in addition to specific performance, or in the event

14

specific performance becomes unavailable for any reason, Mr. Tardif seeks all compensatory, direct, indirect, consequential, incidental, and any other form of damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Conversion)

80. Mr. Tardif re-alleges the facts contained in Paragraphs 1-79 above as set forth herein.

81. Mr. Martin took possession of $40,000 belonging to Mr. Tardif.

82. Mr. Martin took possession of Mr. Tardif's $40,000 under the requirement that he use it for the specific purpose of moving to Colorado and renovating the 13th Street property.

83. When Mr. Martin refused to move to Colorado, his exercise of control over the $40,000 became unauthorized.

84. Mr. Tardif demanded that Mr. Martin return the $40,000 on July 14, 2021.

85. Mr. Martin has refused to return the entire $40,000.

86. Because Mr. Martin did not move to Colorado, he did not use the $40,000 to complete his move to Colorado.

87. Mr. Tardif has suffered damages in an amount to be proven at trial as a result of Mr. Martin's refusal to return the entire $40,000 belonging to Mr. Tardif.

## THIRD CLAIM FOR RELIEF
### (Civil Theft)

88. Mr. Tardif realleges the facts contained in Paragraphs 1-87 above as set forth herein.

89. Pursuant to C.R.S. § 18-4-401, a person commits theft when they knowingly obtain, retain, or exercise control over anything of value of another without authorization and intend to deprive the other person permanently of the use or benefit of the thing of value.

90. Mr. Martin knowingly retained and exercised control over Mr. Tardif's $40,000 without authorization. Mr. Martin knew when he took control over Mr. Tardif's $40,000 that Mr. Tardif required the funds to be used for the specific purpose of moving to Colorado or renovating the 13th Street property. Mr. Martin further knew when he took control over Mr. Tardif's $40,000 that he would not move to Boulder, and thus, would not use the funds for the specified purpose.

91. Mr. Martin intended to permanently deprive Mr. Tardif of the use or benefit of his $40,000. Mr. Martin accepted the $40,000 knowing that he would not move to Boulder. For months, Mr. Martin misled Mr. Tardif and Ms. Vaughn regarding his intention to move to Colorado. When the time finally came to fully perform the Agreement and complete the move, Mr. Martin refused to return the entirety of Mr. Tardif's $40,000 payment and repudiated the Agreement without any valid explanation.

92. Mr. Martin acted with knowledge for his own benefit, and thus perpetrated a civil theft. Mr. Tardif suffered damages in an amount to be proven at trial as a direct and proximate result of Mr. Martin's theft.

93. Pursuant to C.R.S. § 18-4-405, Mr. Tardif is permitted to recover three times the actual damages sustained by him, as well as costs and attorney's fees.

## FOURTH CLAIM FOR RELIEF
### (Fraud)

94. Mr. Tardif realleges the facts contained in Paragraphs 1-93 above as set forth herein.

95. Mr. Martin made a false representation to Mr. Tardif when he stated that he would relocate to Boulder, so that he and Ms. Vaughn could continue to share 50/50 parenting time with their children.

96. Mr. Martin's false representation was material.

97. Mr. Martin made the representation knowing it to be false.

98. Mr. Martin made the representation with the intent that Mr. Tardif rely on it.

99. Mr. Tardif, in fact, did rely on Mr. Martin's representations by, among other things, purchasing both the Spruce Street home and the 13th Street property in Boulder; selling his and Ms. Vaughn's house in Granite Bay, California; advancing Mr. Martin $40,000 between December 2020 and May 2021 to assist with his moving and renovation expenses related to the 13th Street property; and disenrolling the children from their California schools and enrolling them in Boulder Valley School District schools.

100. Mr. Tardif's reliance on Mr. Martin's representations was justified.

101. Mr. Tardif's reliance on Mr. Martin's representations caused Mr. Tardif significant damages in an amount to be proven at trial.

17

## FIFTH CLAIM FOR RELIEF
### (Promissory Estoppel)

102. Mr. Tardif realleges the facts contained in Paragraphs 1-101 above as set forth herein.

103. Mr. Martin made promises to Mr. Tardif to relocate to Boulder, Colorado, and to co-own a home in Boulder with Mr. Tardif.

104. Mr. Martin should reasonably have expected that his promises would induce action by Mr. Tardif.

105. Mr. Tardif, in fact, did reasonably rely on Mr. Martin's promise to his detriment and the detriment of Ms. Vaughn by, among other things, purchasing the Spruce Street and the 13th Street homes in Boulder; selling his and Ms. Vaughn's house in Granite Bay, California; advancing Mr. Martin $40,000 between December 2020 and May 2021 to assist with his moving and renovation expenses related to the 13th Street property; and disenrolling the children from their California schools and enrolling them in Boulder Valley School District schools.

106. Mr. Tardif has suffered damages in an amount to be proven at trial as a result of Mr. Martin's failed promises.

107. Mr. Martin's promise to relocate and co-own the Boulder home must be enforced to prevent injustice.

## PRAYER FOR RELIEF

Mr. Tardif respectfully requests that the Court award the following relief:

1. An order requiring Mr. Martin to specifically perform the terms of the Agreement;

2. All compensatory, direct, indirect, consequential, incidental, and any other

form of damages in an amount to be determined at trial;

    3.      Three times the actual damages sustained by Mr. Tardif as a result of Mr. Martin's civil theft pursuant to C.R.S. §§ 18-4-401, 405;

    4.      Pre- and post-judgment interest;

    5.      Mr. Tardif's costs, expenses, attorneys' fees; and

    6.      Such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Tardif demands a trial by jury on all claims so triable.

Dated: November 3, 2021          Respectfully submitted,

          *s/ Jacob A. Rey*
          Carolyn J. Fairless
          Jacob A. Rey
          Wheeler Trigg O'Donnell LLP
          370 Seventeenth Street, Suite 4500
          Denver, CO 80202
          Telephone: 303.244.1800
          Facsimile: 303.244.1879
          Email: fairless@wtotrial.com
                   rey@wtotrial.com

          Attorneys for Plaintiff Eric Tardif

**CERTIFICATE OF SERVICE (CM/ECF)**

  I HEREBY CERTIFY that on November 3, 2021, I electronically filed the foregoing **AMENDED COMPLAINT AND JURY DEMAND** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Tracy L. Ashmore**
  tashmore@rwolaw.com, kkellow@rwolaw.com, hstahl@rwolaw.com

- **Carolyn J. Fairless** fairless@wtotrial.com, egan@wtotrial.com, sun@wtotrial.com

- **Jacob A. Rey** rey@wtotrial.com, christman@wtotrial.com

           *s/ Jacob A. Rey*