IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02439-NRN

ERIC TARDIF, an individual,

Plaintiff,

v.

CHRISTOPHER MARTIN, an individual,

Defendant.

---

**ORDER ON DEFENDANT'S MOTION TO DISMISS**
**(CONVERTED TO SUMMARY JUDGMENT)**
**(Dkt. #24)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

## INTRODUCTION

This is a breach of contract case with overarching child custody implications. Plaintiff Eric Tardif is the husband of Ms. Alysha Vaughn. Ms. Vaughn is the ex-wife of Defendant Christopher Martin.

Mr. Martin and Ms. Vaughn were divorced in October 2017. They have been cooperatively co-parenting their three children (ages 16, 14, and 11) since the judgment of dissolution was entered in custody proceedings in California state court (the "California Custody Proceedings"). The judgment of dissolution specifies that neither parent can relocate the residence of the minor children without the written consent of the other party. The children and both parents have been living in California.

However, Mr. Tardif and Ms. Vaughn want to live in Boulder, Colorado. And Ms. Vaughn would like to be close to her children. Accordingly, Mr. Martin and Ms. Vaughn were negotiating an agreement whereby Mr. Martin would move with the children to Boulder and enroll them in Boulder schools so that they could regularly see both parents. Mr. Martin lacked the money to make the move himself, so Mr. Tardif, Ms. Vaughn's current husband, agreed to facilitate the move by buying a house in Boulder for Mr. Martin to live in, which would be jointly owned by the two men with Mr. Martin making payments that he could afford.

For reasons that are disputed, the deal to move to Boulder fell apart before final documents were signed. Mr. Martin decided to stay in California and re-enrolled the children in California schools. Mr. Martin then received an expedited ruling from the California court that there was no enforceable contract between him and Ms. Vaughn to move to Colorado. Ms. Vaughn is fighting in the California custody court for the right to move the children to Colorado, arguing that it is in their best interests to do so. Now, Mr. Tardif brings this breach of contract/promissory estoppel/civil theft action against Mr. Martin seeking specific performance and/or damages because Mr. Martin reneged on the deal to move to Colorado after Mr. Tardif had already bought the house that Mr. Martin was to be a joint owner of.

## PROCEDURAL BACKGROUND

This matter comes before me on Defendant's Motion to Dismiss, filed November 17, 2021. (Dkt. #24.) Mr. Tardif filed a response on December 8, 2021. (Dkt. #29.) Mr. Martin filed his reply on December 22, 2021. (Dkt. #32.) The Court heard argument on the Motion to Dismiss on December 28, 2021. (Dkt. #34.) The Court allowed the filing of

supplemental briefs on the question of the preclusive effect, if any, of the decision by the California court addressing child custody matters. Additional court documents from the California Custody Proceedings were submitted on January 26, 2022. (Dkt. #38.) On the same date, Mr. Tardif filed a supplemental brief in opposition to the motion to dismiss. (Dkt. #39.) On February 1, 2022, Mr. Martin submitted his own supplemental brief in support of the motion to dismiss. (Dkt. #40.)

After reading the supplemental submissions, I concluded that given the additional documentation submitted beyond the Complaint, it would be prudent to convert the motion to dismiss to a motion for summary judgment (at least on the question of the preclusive effect of the California decision). Thus, on February 7, 2022, I gave notice to the Parties of the intent to convert the motion to dismiss to a motion for summary judgment. (*See* Minute Order of February 7, 2022, Dkt. #41.) By that Minute Order, the Parties were permitted to submit additional declarations or affidavits and were given until March 4, 2022 to submit any rebuttal affidavit and short additional briefs.

I have considered the Amended Complaint, the supplemental briefing, the additional documents submitted from the California Proceedings, and any and all supplemental affidavits and briefs. I conclude that the Motion to Dismiss (Dkt. #24) should be denied without prejudice and the matter should be stayed and administratively closed pending a final determination by the California court of the underlying and intimately interrelated child custody issues.

## FACTUAL BACKGROUND

This is a breach of contract case that originates out of a California child custody dispute. The Plaintiff, Eric Tardif, resides in Boulder, Colorado. The Defendant,

Christopher Martin, lives in Granite Bay, California. Mr. Tardif is now married to Mr. Martin's ex-wife, Alyshia Vaughn.

Mr. Martin and Ms. Vaughn share three children together and there is a dispute as to where the children will live and where they will be educated.

Mr. Martin and Ms. Vaughn were divorced October 2017 in California. Per the judgment of dissolution, Mr. Martin and Ms. Vaughn were to exercise a 50/50 parenting plan with a two weeks on/two weeks off schedule.

In December 2020, Mr. Tardif (the current husband), Ms. Vaughn, and Mr. Martin (the ex-husband) began negotiating an agreement for both families to relocate with the children from Granite Bay, California to Boulder, Colorado, where Mr. Tardif would like to live with Ms. Vaughn. If Mr. Martin were to live with the children in Colorado, then the parents could continue to share custody and parenting, while Ms. Vaughn could reside in Boulder with her husband, Mr. Tardif. (*See* Am. Compl., Dkt. #19 at ¶ 17.)

Because Mr. Martin could not afford to relocate to Boulder without financial assistance, the agreement was that Mr. Tardif would purchase a home in Boulder for Mr. Martin to use as Mr. Martin's principal residence. The Boulder home was to be co-owned by 50-50 by Mr. Tardif and Mr. Martin. (*Id.* at ¶ 18.)

Consistent with these negotiations, Mr. Martin made multiple trips to Boulder to search for homes and neighborhoods that would suit his needs. There was also time spent negotiating and structuring the ownership/partnership side of the deal. Most of these communications were in writing, via email between the Parties or with Colorado counsel. (*Id.* at ¶ 19.)

In March 2021, Ms. Vaughn and Mr. Martin jointly informed their children that their family would be moving to Boulder. (*Id.* at ¶ 21.)

In alleged reliance on Mr. Martin's promise to move to Boulder, Mr. Tardif purchased a property on 13th Street in Boulder for $2.3 million on April 23, 2021. Mr. Martin was intimately involved in the purchase process. He personally selected the home as his residence and was present for the home inspection. (*Id.* at ¶¶ 22–23.)

Mr. Tardif alleges that on April 27, 2021, Mr. Martin sent him and Ms. Vaughn an email specifying the terms of the agreement. (*Id.* at ¶ 24.) Mr. Tardif claims that he agreed to Mr. Martin's terms as set forth in his April 27, 2021 email. (*Id.* at ¶ 26.)

Immediately after the purchase of the Boulder home, Mr. Martin was given possession. He spent time making repairs and upgrades to the home shortly after purchase. Mr. Martin even moved belongings into the home, initiated utility services in his name, and brought a car from California to Boulder for his use there. (*Id.* at ¶ 28.)

Mr. Tardif had also agreed to pay costs in the amount of $65,000 in connection with Mr. Martin's relocation and provide up to $75,000 to Mr. Martin for renovations Mr. Martin wished to make on the 13th Street property. The $75,000 renovation funds were to be capitalized in the home purchase. (*Id.* at ¶ 25.)

In alleged reliance on the Parties' agreement, Mr. Martin accepted payments from Mr. Tardif of $40,000 from December 2020 through May 2021. Mr. Martin then actually began the anticipated home renovations, using the funds supplied by Mr. Tardif. (*Id.* at ¶¶ 29–31.)

In supposed reliance on the agreement, Mr. Tardif and Ms. Vaughn sold their home in Granite Bay, California on June 4, 2021, and purchased another home in

Boulder to be closer to Mr. Martin's home and for the convenience of the children. (*Id.* at ¶¶ 33–34.)

In May 2021, the three children were enrolled by Mr. Martin and Ms. Vaughn in schools in the Boulder Valley School District and were disenrolled from the schools in Granite Bay, California. Mr. Martin participated in this process, providing input on school selection and providing documents to facilitate school enrollment. (*Id.* at ¶¶ 35–36.)

However, the precise terms of the details of the home purchase agreement were still being worked out. Mr. Tardif hired an attorney in Boulder, Colorado to draft the formal contract terms based upon Mr. Martin's April 27, 2021 emailed terms. (*Id.* at ¶ 37.) During that process, Mr. Tardif's attorney explained the need to change the structure of the mortgage to avoid violations of the IRS code. (*Id.* at ¶ 38.)

On June 17, 2021, Mr. Tardif sent Mr. Martin a *modified* term sheet that clarified how the terms needed to be changed and proposed a modified ownership structure. Mr. Tardif claims he provided the new term sheet for consideration and comparison only and never rejected Mr. Martin's proposal of April 27, 2021. (*Id.* at ¶ 39.) Mr. Tardif alleges that the April 27, 2021 term sheet had already been accepted by the Parties. Per Mr. Tardif's Amended Complaint, the June 17, 2021 proposed modification was merely to demonstrate the relative equivalency of the two structures. (*Id.*) Nonetheless, Mr. Tardif later supposedly instructed his attorney to meet with Mr. Martin and conclude the transaction based on the original April 27, 2021 structure. (*Id.* at ¶ 41.) Mr. Martin now argues that the proposed modification was either a repudiation of the April 27 structure, or a counteroffer, and that Mr. Tardif never formally accepted the April 27 terms.

Mr. Tardif, on the other hand, alleges that Mr. Martin confirmed during a June 18, 2021 phone call with Mr. Tardif's lawyer that Mr. Tardif's June 17 term sheet was not a repudiation of the April 27 term sheet. (*Id.* at ¶ 44.) On June 23, 2021, Mr. Martin met with Mr. Tardif's attorney in Boulder. Mr. Tardif alleges that no terms remained unresolved on the April 27 term sheet. Mr. Martin and Mr. Tardif's attorney agreed that the attorney would talk with Mr. Tardif the following day to finalize the drafts of the purchase agreement, the note, and the deed of trust, and then she would send the documents to Mr. Martin the following week. (*Id.* at ¶¶ 48–49.)

On June 24, 2021, Mr. Martin allegedly left Mr. Tardif a voicemail confirming that the meeting with the attorney was a success, saying that everything looked good. (*Id.* at ¶ 50.) It is alleged that on June 23, 2021, the Parties agreed to modify the terms of the agreement to include a 1% interest rate, rather than the previously agreed 0.75% interest rate, and for Mr. Tardif to pay property insurance on the home. (*Id.* at ¶ 51.)

But, on June 26, 2021, Mr. Martin sent another email stating he was no longer moving to Boulder and no longer consented to the children attending school in Boulder. Mr. Martin unilaterally told his children and other family members they were no longer moving to Boulder. (*Id.* at ¶¶ 52–55.) He then re-enrolled the children in their California schools. (*Id.* at ¶ 60.)

On July 9, 2021, Mr. Martin filed papers in the California Proceedings seeking to prevent the children from staying in or moving to Colorado. On July 13, 2021, the California Superior Court Commissioner ruled the children must stay in California pending further proceedings in the custody matter. As a result, Mr. Tardif and Ms. Vaughn have been unable able to permanently relocate to Colorado. (*Id.* at ¶¶ 61–63.)

Mr. Tardif claims that when Mr. Martin entered into the alleged agreement and promised to move to Colorado, his true intent was not to move to Colorado as promised, but to continue to reside in California with custody over his and Ms. Vaughn's children. The claim is that Mr. Martin wanted to mislead Mr. Tardif and Ms. Vaughn into moving to Colorado, and then use their relocation as leverage in the California Proceedings. Requiring the children to stay in California while Ms. Vaughn moved out of state would provide him greater control over his and Ms. Vaughn's children, with less day-to-day involvement from Ms. Vaughn and Mr. Tardif. Mr. Martin knew that the California custody court would be unlikely to allow the children to move without his consent. Mr. Martin also knew that Ms. Vaughn was unlikely to move to Boulder unless he agreed to move. Thus, Mr. Martin misled Mr. Tardif and Ms. Vaughn for months regarding his intention to move to Colorado. After Mr. Tardif and Ms. Vaughn completed their move to Colorado, Mr. Martin breached the agreement and refused to move to Colorado without any valid explanation. (*Id.* at ¶¶ 65–66.)

Mr. Tardif alleges that he has suffered significant damages from Mr. Martin's repudiation of the agreement to relocate to Colorado, including the cost of paying for temporary housing and transportation in California and travel costs between California and Colorado so that Ms. Vaughn can exercise her parenting time. (*Id.* at ¶¶ 69.)

## PLAINTIFF'S CLAIM FOR RELIEF

Mr. Tardif has brought the following claims against Mr. Martin:

1. For breach of an express contract. Mr. Tardif alleges that the April 27, 2021 term sheet represents a meeting of the minds and the formation of an enforceable contract. He claims that Mr. Martin evidenced his agreement to

the contract by accepting the $40,000 advance payment; participating in the selection and purchase of the 13th Street home; beginning renovations to the 13th Street home; moving some of his personal property into the 13th Street home; participating the enrollment of the children in the Boulder Valley School District schools; and telling teachers, friends and family members that the family was moving, among other things. (*Id.* at ¶¶70–75.) Mr. Martin later agreed to modify the terms to include a 1% interest rate pursuant to IRS requirements and require Mr. Tardif to assume property insurance expenses. (*Id.* at ¶ 75.) Mr. Tardif seeks to compel specific performance of the agreement, or in the event specific performance is not available, money damages.

2. For conversion. This claim relates to the $40,000 that Mr. Tardif provided to Mr. Martin. The allegation is that the $40,000 was paid for the specific purpose of moving to Colorado or renovating the 13th Street home. By accepting the money, knowing he would not move to Colorado, Mr. Martin's continued exercise of control over the money was unauthorized.

3. For civil theft. Mr. Tardif alleges that Mr. Martin committed theft with respect to the $40,000 by obtaining it without authorization and with the intent to deprive Mr. Tardif of it permanently, knowing that he would never moving to Colorado.

4. For fraud. The claim is that Mr. Martin made a false representation to Mr. Tardif by stating that he agreed to relocate to Boulder so that he and Ms. Vaughn could continue to share 50/50 parenting time with their children.

5. For promissory estoppel. The claim is that Mr. Martin made a promise to relocate to Boulder, Colorado and to co-own a home in Boulder with Mr. Tardif. Mr. Martin should reasonably have expected that his promise would induce action by Mr. Tardif. Mr. Tardif did reasonably rely on Mr. Martin's promise to his detriment by. Among other things, Mr. Tardif purchased homes in Boulder, sold the house in Granite Bay, California, advanced $40,000 to Mr. Martin, and unenrolled the children from their California schools and enrolled them in Boulder Valley School District schools.

**MR. MARTIN'S MOTION TO DISMISS**

Mr. Martin has moved to dismiss the Amended Complaint. (*See* Dkt. #24.) Mr. Martin argues that this case boils down to whether there was an enforceable contract requiring Mr. Martin to move to Colorado and become a co-owner in property with Mr. Tardif. Mr. Martin emphasizes that there is no written acceptance by Mr. Tardif of Mr. Martin's April 2021 term sheet, and Mr. Tardif never accepted those terms in writing at any point through June 17, 2021. Mr. Martin argues that the legal impact of Mr. Tardif's June 17, 2021 email is either a repudiation of the April 27 term sheet, or a counter-offer. In addition, Mr. Martin points to the fact that the California court has already concluded that there was no enforceable contract.

Thus, Mr. Martin's arguments for dismissal center on two discrete points: (1) the lack of a signed written agreement by both parties laying out specific agreed terms, and (2) the fact that the California custody court has already rejected the notion that the April 27, 2021 email from Martin is an enforceable contract.

Mr. Martin also argues that this Court should abstain from entertaining the Amended Complaint under the *Colorado River* doctrine of abstention because the issue of custody and whether the children should or should not move to Colorado is now before the California custody court.

As to the conversion claim, Mr. Martin argues it should be dismissed because cash cannot be converted. Mr. Martin also argues that the civil theft claim should be dismissed based on the timing of the transfer of funds. Mr. Martin argues that he received funds that were provided to him voluntarily in anticipation of relocation on terms that were never finalized. Thus, Mr. Martin stole nothing. He received funds that were voluntarily provided in anticipation of a contract that was never finalized.

## ANALYSIS

### The status of the California Custody Proceedings is important to the Court's consideration of Defendant's Motion to Dismiss.

The Parties have submitted extensive materials, including affidavits and transcripts from the pending California Custody Proceedings, denominated as Case No. S-DR-0050060, in the Superior Court in and for the County of Placer, California, before Commissioner Michael Jacques.

A brief relevant chronology of those proceedings is as follows:

- On July 9, 2021, Mr. Martin filed for a temporary emergency order asking (1) Ms. Vaughn to provide proof of the children's return plane tickets to California for Ms. Vaughn's July 18, 2021 trip with the children to Colorado, and (2) for an order stating that Ms. Vaughn is not allowed to move the children to Colorado. (*See* Appl. for Temporary Emergency Order, Dkt. #38-1.)

- A hearing was set on the emergency request for July 13, 2021. (Dkt. #38-2.)

- On July 13, 2021, Ms. Vaughn's counsel filed a detailed Responsive Declaration to the request for emergency orders which included an affidavit by Ms. Vaughn. Ms. Vaughn's affidavit outlines many of the facts supporting Mr. Martin's alleged binding agreement to move to Boulder with the children. (That agreement forms the basis for the breach of contract claim in this case.) In that affidavit, she declares that "Based on [Mr. Martin's] written consent and actions, I have already sold my home in Granite Bay, purchased a $2.325 million dollar home for [Mr. Martin] and the children to live in Boulder, provided [Mr. Martin] $40,000 in relocation funds, and purchased a home for myself and my new husband, Eric, less than 2 miles from Chris' home in Boulder Colorado so that the children can continue to share time with both parents." (Dkt. #38-3 at 4–5 (emphasis in original).)

- On July 13, 2021, the custody court ruled all existing orders were to remain in place, and the children were ordered disenrolled from the Boulder schools.

- On July 23, 2021, Ms. Vaughn filed a motion for reconsideration of the decision to disenroll the children from the Boulder schools and to prevent the children from moving to Colorado (absent both parents' agreement).

- In connection with both the original hearing and on Ms. Vaughn's motion for reconsideration, it is clear there was extensive briefing and argument on whether there was an enforceable agreement between Mr. Martin and Ms. Vaughn/Mr. Tardif for Mr. Martin to move with the children to Colorado, including an agreement to jointly purchase a home for Mr. Martin to live in. (*See, e.g.,* Alysha Martin's Mem. of Points and Authorities in Support of Mot. for Reconsideration,

Dkt. #38-7 at 2–4) (arguing that even Mr. Martin's own declaration supports a finding of "mutual consent" and a "meeting of the minds" to relocate the children to Boulder, Colorado); *id.* at 5–9 (arguing that the doctrines of equitable estoppel and partial performance substantiate the existence of mutual consent and "the enforceable terms of the April 27, 2021 Contract").)

- The evidence put forward to support the existence of the agreement to "relocate the children to Boulder" in the California Proceedings was and is the same evidence cited in the instant Amended Complaint as to the supposed agreement between Mr. Martin and Mr. Tardif for the purchase of the Boulder home and the advancement of funds for home renovations.

- On October 21, 2021, Commissioner Jacques issued an order denying Ms. Vaughn's motion for reconsideration, making clear that in his original ruling, he had found no enforceable agreement binding Mr. Martin, but he disagreed with Mr. Martin that a contractual analysis was out of place. In other words, the Commissioner specifically considered Ms. Vaughn's argument that there was an enforceable agreement to modify the Marital Settlement Agreement to move to Colorado, but rejected it, finding that "the parties' extensive negotiations to that end" had not "ripened" to a binding contract:

> The court disagrees with petitioner that contract-based emphasis at this stage of the proceedings is misplaced, and the court's focus should be on the best interests of the children (See, Supp. Dec. 2:23-3:4). While the overall goal of the court, as always, is to determine the best interest of the children, the proper analysis at this juncture is, and the court's ruling on July 13 was, founded on application of contract law to the facts of the case. Petitioner professes that he "…fails to see…" the pertinence of contract law at this stage, and the court therefore explains: On July 13, the petitioner would hardly have been in a position to argue that the best interests

of the children were not vindicated by the move to Colorado, had the court determined that the parties' extensive negotiations to that end had ripened into an agreement. Whether petitioner and her husband's efforts they were willing to bring to bear were sufficient, or done with sufficient good faith, were not before the court on July 13, nor are they before the court now, and the court disavows any opinion on these scores. What can be said with certitude is that the parties' Marital Settlement Agreement is a *contract* that expressly provides for the possibility that the parties might negotiate a move away in the future, that is, a modification of the MSA contract to be interpreted using contract law.

The "call" on July 13 as to whether the evidence preponderated in favor of the conclusion that a contract had been formed was a close one, thought [sic] the court was convicted [sic] then, and remained convinced now, that it reached the correct conclusion. The court reads the aspersive passage in Supp. Dec., 3:5-6 as being to the effect that petitioner thinks that respondent's actions are not motivated by a sincere desire to further what she believes to be the children's best interests. There is no support in this record for that discordant aspersion. It seems likely that, had the broad strokes of the nascent negotiations coalesced into an agreement, the result would have been emphatically in the children's best interests.

(Dkt. #38-18 at 2–3.)

- The current status of the situation is that the California custody court, having rejected Ms. Vaughn's argument that there is a binding contract requiring Mr. Martin to move to Colorado, is in the process of determining whether allowing the children to move to Colorado with their mother is in the children's best interests. As represented by the Parties during a Status Conference on March 17, 2022, a child custody evaluator performed an analysis of this issue and provided a report recommending that the children stay in California. Because of this adverse recommendation, Ms. Vaughn will be seeking a trial on the issue, after which the custody court will determine whether a move away

from California to Colorado is in the children's best interests. The trial may not happen until the summer of 2022.

**There is privity between Ms. Vaughn and Mr. Tardif.**

Mr. Tardif argues that whatever happened in the California Custody Proceedings cannot bind him because he was not a party to those proceedings. To the contrary, the Court finds that there is privity between Ms. Vaughn and Mr. Tardif. Mr. Tardif's effort to suggest that the alleged home purchase contract between himself and Mr. Martin is distinct from the custody/child relocation and school enrollment dispute between Mr. Martin and Ms. Vaughn is unpersuasive. These issues are intimately intertwined. The alleged agreement between Mr. Tardif and Mr. Martin to jointly buy a house in Boulder is part and parcel of the same alleged agreement between Mr. Martin and Ms. Vaughn to relocate the children to Colorado and enroll them in school in Boulder. In fact, it appears to be the exact same agreement. In the California Custody Proceedings, Ms. Vaughn even claims that she is the one who bought the houses in Colorado, all in compliance with her agreement for Mr. Martin to move with the children to Colorado.

"Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989). The Tenth Circuit has recognized that no definition of privity can be "'automatically applied in all cases". *Century Indem. Co. v. Hanover Ins. Co.*, 417 F.3d 1156, 1160 (10th Cir. 2005) (quotation omitted).

There are six categories of recognized exceptions where a non-party in a prior suit can nonetheless be bound by the prior ruling: (1) when a person agrees to be

bound by the determination of issues in an action between others; (2) when a pre-existing substantive legal relationship exists; (3) when a nonparty was "adequately represented by someone with the same interests who [wa]s a party" in an earlier suit; (4) when the nonparty assumed control over the earlier litigation; (5) when a party who did not take part in litigation, as a way of avoiding preclusion, later sues as the designated representative of a person who was a party to the earlier suit; and (6) when a special statutory scheme, such as bankruptcy, so directs. *Pelt v. Utah*, 539 F.3d 1271, 1281-82 (10th Cir. 2008) (citing *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008)). In this instance, the nonparty in the custody dispute, Mr. Tardif, was adequately represented by the person with the same interests who was a party, Ms. Vaughn. At least with respect to the breach of contract allegations, there is substantial identity between the issues in controversy both here and in California and the legal interests of Ms. Vaughn and Mr. Tardif are identical.

The Court therefore finds Ms. Vaughn and Mr. Tardif to be privies and, if the principles of issue preclusion were to be applied, Mr. Tardif may well be bound by the decisions made by the California custody court, at least with respect to the breach of contract issues. But, as described below, the Court need not decide that question at this time.

### The *Colorado River* doctrine counsels abstention.

As a general rule, "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). But, at times, "reasons of

wise judicial administration" must weigh in favor of "permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding." *Id.* at 818. Granted, these occasions are not ordinarily encountered. Yet such "circumstances, though exceptional, do nevertheless exist." *Id.* It is well-established that federal courts have the power to refrain from hearing, among other things, cases which are duplicative of a pending state proceeding. "This latter principle—the avoidance of duplicative litigation—is at the core of the *Colorado River* doctrine." *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013).

First, I do find that this federal proceeding is parallel with the California Custody Proceedings. Clearly, the alleged agreement for Mr. Martin to move with the children to Colorado and buy into a home purchased by Mr. Tardif is part of the California Custody Proceedings and has already been litigated in part. I find that substantially the same parties in different forums are litigating substantially the same issue; namely, the existence, or not, of an agreement to move the children to Colorado with Mr. Martin agreeing to buy 50 percent of home in Boulder. It is true that the California Custody Proceedings have at their heart the best interests of the children and where they should live but, as noted above, the alleged home-buying agreement between the parents was argued by Ms. Vaughn to be integral to that analysis.

Having determined that the two proceedings are parallel at least in some respects, the Court must consider those factors set forth in *Colorado River* to determine if the circumstances are such that it is proper for the Court to abstain. These factors include: (1) whether the state or federal court first assumed jurisdiction over the same res; (2) the inconvenience of the federal forum; (3) "the desirability of avoiding

piecemeal litigation"; and (4) "the order in which jurisdiction was obtained by the concurrent forums." 424 U.S. at 818. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Id.* at 818–19; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (stating that the *Colorado River* factors are not a "mechanical checklist," "careful balancing" is required and "[t]he weight to be given to any one factor may vary greatly from case to case").

Applying these factors, I do not find that either court has assumed jurisdiction over property, so that factor is inconclusive. The federal forum is inconvenient to Mr. Martin, who continues to reside in California. But he was allegedly prepared to move to Colorado and visited here to view the proposed property, so this factor does not weigh heavily one way or another. Mr. Martin's ex parte motion was filed in July 2021 in the California Custody Proceedings after negotiations had broken down and Mr. Martin decided he did not want to move to California. This case was filed in Colorado state court approximately a month later, in August 2021. So, the fourth factor militates in favor of abstention, albeit only slightly. The strongest factor in favor of abstention is the desirability of avoiding piecemeal litigation, coupled with the unusual child custody elements of this case.

The federal courts have long recognized a domestic relations/child custody exception to federal jurisdiction. *See Ankenbradt v. Richards*, 504 U.S. 689 (1992) (continuing to recognize the domestic relations limitation on federal-court jurisdiction). It is not an area where federal courts have expertise and, with limited exceptions, it is not

an area where Congress legislates. Here, of course, Mr. Tardif does not seek a decree for custody. But the breach of contract claim he *has* brought is closely related to and could adversely affect the ongoing child custody proceedings in California.

For example, in this case, Mr. Tardif seeks (among other things) specific performance of Mr. Martin's alleged agreement to buy a half-interest in a two million-plus dollar house in Boulder. A judgment in Mr. Tardif's favor might put undue financial pressure on Mr. Martin to move to Colorado with the children, even in the face of ongoing proceedings in California to determine whether it is in the children's interests to do so. By contrast, if the California court were to decide that it *is* in the children's interests to move to Colorado, that might change Mr. Martin's mind about accepting the terms of the agreement that he is alleged to have unlawfully breached. Having two different courts simultaneously making decisions that might impact, whether directly or indirectly, where the children should live is neither efficient nor consistent with the goal of avoiding piecemeal litigation. In addition, as a federal court inexpert in child custody matters, this Court is reluctant to proceed to the merits of a breach of contract case that is so intertwined with on-going child custody proceedings in California, especially where the custody court has already made findings relating to the enforceability of the very contract at issue here. Having engaged in the "careful balancing" mandated by the *Colorado River* caselaw, it makes the most sense to stay this case pending the outcome of the California Custody Proceedings.

**The Court will stay and administratively close this action pending a determination by the California court whether it is in the best interests of the children to move to Colorado.**

The Court will not dismiss this suit, but will instead administratively close the matter, effectively staying it for an indefinite period of time. *See* Wright and Miller, *Federal Practice and Procedure* § 4247 (3d ed.) (noting that while the Supreme Court has said *Colorado River* necessarily contemplates that the federal court will have nothing further to do with the case, whether it stays or dismisses, "a number of lower courts have expressed a preference for a stay so that a federal forum will remain available if the state-court litigation should not provide a complete and prompt resolution of the issues").

The Tenth Circuit has construed an administrative closure to be "the practical equivalent of a stay." *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987). In *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389 (1st Cir. 1999), the First Circuit explained the nature of administrative closure: "Administrative closings comprise a familiar, albeit essential, ad hoc way in which courts remove cases from their active files without making any final adjudication. The method is used in various districts throughout the nation in order to shelve pending, but dormant, cases." *Id.* at 392 (internal citations and quotation marks omitted). The First Circuit further explained that "an administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository." *Id.* Administrative closure "d[oes] not terminate the underlying case, but, rather, place[s] it in inactive status until such time as the judge, in his discretion or at the request of a party, cho[o]se[s] either to reactivate it or to dispose of it with finality." *Id.*

This Court routinely administratively closes cases pursuant to D.C.COLO.LCivR 41.2 when a case would otherwise be stayed for an indefinite period of time. *See, e.g., Atkins v. HCA-HealthONE, LLC*, No. 15-cv-000374-WYD-KLM, 2015 WL 1298507, at *1 (D. Colo. March 19, 2015) (administratively closing case while plaintiff pursued second EEOC claim); *Mauchlin v. Zhon*, No. 12-cv-01449-RM-BNB, 2015 WL 479042, at *1 (D. Colo. Feb. 3, 2015) (administratively closing case "subject to reopening for good cause subsequent to Plaintiff's vision problems being addressed"); *San Juan Cable LLC v. DISH Network LLC*, No. 14-mc-00261-RM-MJW, 2015 WL 500631, at *1 (D. Colo. Jan. 23, 2015) (administratively closing case "to be reopened only if the U.S. District Court for the District of Puerto Rico refers a related enforcement matter to this Court"); *Workalemahu v. Heritage Club*, No. 14-cv-02396-RM-MEH, 2015 WL 293261, at *1 (D. Colo. Jan. 21, 2015) (administratively closing case pending arbitration). In this case, it is unclear when the pending state court custody issues will be resolved. Administrative closure is the most appropriate method of staying this matter while the California Custody Proceedings play out.

The Parties may seek to reopen the matter when the California court has decided whether Ms. Vaughn is entitled to move the children to Colorado. Obviously, certain claims in this case will remain to be resolved even after that decision is made, including, for example, whether Mr. Martin can be held liable for not returning the funds that had been advanced to him. But those issues can be decided later, after the paramount issue of where the children should live is decided by the California court.

## CONCLUSION

Wherefore, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. #24) is **DENIED WITHOUT PREJUDICE**. It is further

**ORDERED** that this case shall be **ADMINISTRATIVELY CLOSED** pending a decision by the California custody court on Ms. Vaughn's request to move the children to Colorado. **Within ten days from the date of that decision, the Parties shall file a joint status report with the Court indicating whether they would like to reopen the case and what issues, if any, are left for decision**.

BY THE COURT

Dated:     March 21, 2022             _____
           Denver, Colorado          N. Reid. Neureiter
                                      United States Magistrate Judge